ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ROBERTO SUEIRO DEL VALLE,<br><br>Peticionaria,<br><br>v.<br><br>JOSÉ "PEPE" DUEÑO PALMER; JOSÉ DUEÑO ENTERTAINMENT GROUP, INC.; SEBA ROCK ENTERTAINMENT, LLC,<br><br>Recurrida. | TA2025CE00526 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón.<br><br>Civil núm.: BY2022CV00362.<br><br>Sobre: apropiación ilegal; incumplimiento de contrato; dolo contractual; daños contractuales y extracontractuales. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 31 de octubre de 2025.

Comparece la parte peticionaria, señor Roberto Sueiro Del Valle (señor Sueiro), y nos solicita que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 15 de julio de 2025, notificada al día siguiente. Mediante el referido dictamen, el foro *a quo* declaró sin lugar la solicitud de sentencia sumaria parcial presentada por la parte peticionaria. En consecuencia, ordenó la continuación de los procedimientos en el caso que motiva este recurso.

Por su parte, la recurrida compuesta por el señor José "Pepe" Dueño Palmer (señor Dueño), y las empresas que preside, a decir: Seba Rock Entertainment, LLC (Seba), y José Dueño Entertainment Group, Inc. (JDEG) (en conjunto, los recurridos), presentó su oposición a la expedición del recurso el 10 de octubre de 2025.

Evaluado el expediente electrónico del caso, así como las sendas posturas de las partes litigantes, este Tribunal deniega la expedición del auto.

I

Según surge del expediente y de las alegaciones de las partes litigantes, para el verano del 2019, los señores Sueiro, Javier Gómez (señor Gómez) y José "Pepe" Dueño Palmer (señor Dueño), junto a la corporación que este último preside, Seba Rock Entertainment, LLC (Seba), convinieron verbalmente ser coproductores de varios conciertos de los exintegrantes de la banda *Menudo*. Las ganancias se repartirían en un 50% para el señor Dueño, 25% para el señor Gómez y 25% para el señor Sueiro. Tales conciertos se llevarían a cabo de manera consecutiva en Puerto Rico y en otras ciudades, incluida Miami. El concierto de Miami y uno de Puerto Rico estaban pautados para llevarse a cabo a principios del 2020, pero fueron cancelados debido a la pandemia del Covid-19.

A raíz de la pandemia, el gobierno federal concedió a ciertos negocios y empresas el *Shuttered Venue Operators Grant* (SVOG)[1], regulado por la *Small Business Administration* (SBA). Las partes litigantes acordaron verbalmente que el señor Dueño se encargaría de tramitar la solicitud para tales ayudas, tomando como base las ganancias percibidas en el primer concierto que se llevó a cabo en el 2019. El señor Sueiro aduce que el señor Dueño le aseguró que había sometido las solicitudes de ayuda correspondientes a los conciertos de Miami y de Puerto Rico a nombre de Seba. No obstante, el señor Dueño le informó que el sistema electrónico no le permitió cargar la solicitud, porque el concierto de Miami no cualificaba para las ayudas.

Sin embargo, el señor Sueiro sostiene que el señor Dueño sí sometió la solicitud de ayuda, pero a nombre de José Dueño Entertainment Group, Inc. (JDEG), con el fin de ocultarle las ayudas recibidas y no repartirlas entre los socios. De igual manera, alega que el señor Dueño le

---

[1] Surge que este programa consta de una subvención de fondos federales conforme al cual se extendió una ayuda económica a la industria del entretenimiento, con el fin de mitigar los efectos de las pérdidas económicas por consecuencia de la pandemia del Covid-19. Además, tenía como propósito incentivar la producción de eventos futuros, así como la creación de empleos para dicha industria. Conforme la reglamentación de la SBA, los fondos otorgados debían utilizarse para la producción de eventos futuros.

pagó una cantidad menor por el concierto que se canceló en Puerto Rico y que sí recibió el beneficio de la ayuda federal.

Por su parte, el señor Dueño aduce que el concierto de Miami no cualificaba para las ayudas federales, pues no se había percibido ganancias en la medida en que el dinero de las taquillas vendidas fue devuelta íntegra y directamente a sus adquirentes. Por tal razón, concluye que no le debe nada al señor Sueiro por concepto de dicho concierto.

Además, el señor Dueño sostiene que el pago que le hizo al señor Sueiro no tuvo que ver con los reembolsos de gastos por los eventos cancelados. De igual manera, afirma que el dinero que recibieron sus empresas por el SVOG no se relaciona a eventos coproducidos con el señor Sueiro. Sostiene que nunca se comprometió a someter la solicitud para las ayudas federales a nombre del señor Sueiro o del señor Gómez.

Trabada la controversia, el 31 de enero de 2022, el señor Sueiro instó la demanda de autos sobre apropiación ilegal, fraude, incumplimiento de contrato, dolo contractual, y daños contractuales y extracontractuales contra la parte recurrida del título[2]. Le imputa el incumplimiento del contrato verbal presuntamente perfeccionado entre las partes litigantes, con relación a la solicitud y pago de las ganancias dejadas de percibir por causa de la cancelación de los eventos del cual las partes eran coproductores.

El señor Sueiro alegó que el señor Dueño se obligó a gestionar la solicitud al SVOG para recuperar las ganancias futuras frustradas sobre los eventos que presuntamente cualificaban para la subvención federal. Además, sostuvo que el señor Dueño manipuló el cómputo de los gastos para no pagarle lo que le adeudaba por estos conceptos.

Por su parte, el 29 de marzo de 2022, el señor Dueño presentó su contestación a la demanda, junto a una reconvención[3]. En esta, negó todas las imputaciones en su contra y planteó sus defensas afirmativas, entre otras, que no le adeudaba dinero alguno al peticionario, que no hubo

---

[2] Entrada núm. 1, *Sistema Unificado para el Manejo y Administración de Casos* (SUMAC) del Tribunal de Primera Instancia (TPI).

[3] *Íd.*, entrada núm. 17.

ingreso atribuible por el concierto de Miami, que fue cancelado, y que no pudo solicitar las ayudas del SVOG por los restantes conciertos, ya que no cualificaban para tales ayudas, conforme a los requisitos de la agencia federal. Por vía de reconvención, reiteró sus alegaciones, y solicitó daños angustias y mentales ante la temeridad y frivolidad de la demanda incoada.

Consecuentemente, en la misma fecha, el señor Sueiro solicitó la desestimación de la reconvención[4]. Luego de varios trámites sobre el descubrimiento de prueba, que no son necesarios pormenorizar, el 11 de julio de 2022, el señor Dueño presentó su oposición a la solicitud de desestimación a su reconvención[5]. A tales efectos, el foro primario emitió una *Resolución y Sentencia Parcial*[6]. Mediante el referido dictamen, el foro recurrido desestimó con perjuicio la reconvención instada por el señor Dueño.

Luego de otros incidentes procesales, el 19 de enero de 2023, el señor Sueiro presentó una demanda enmendada[7]. Por otro lado, el 11 de mayo de 2023, el señor Dueño y las empresas recurridas presentaron su contestación a la demanda enmendada[8].

Así las cosas, el 31 de julio de 2024, el señor Sueiro presentó una moción intitulada *Moción de sentencia sumaria parcial sobre incumplimiento de contrato y dolo contractual*[9].

El 2 de agosto de 2024, el foro primario notificó una orden en la que dispuso que los recurridos contarían con un término de treinta (30) días para presentar su posición respecto a la moción del señor Sueiro[10]. Sin embargo, el 28 de agosto de 2024, los recurridos solicitaron que dicho

---

[4] Entrada núm. 18, SUMAC TPI.

[5] *Íd.*, entrada núm. 69.

[6] *Íd.*, entrada núm. 72.

[7] *Íd.*, entrada núm. 113. **La enmienda respondió a la acumulación de JDEG como parte demandada**. El foro primario aceptó su presentación mediante una orden notificada el 13 de febrero de 2023.

[8] *Íd.*, entrada núm. 141.

[9] *Íd.*, entrada núm. 164.

[10] *Íd.*, entrada núm. 165.

término se dejara sin efecto hasta tanto se concluyera el descubrimiento de prueba[11]. El foro recurrido accedió a la petición de los recurridos mediante una orden notificada el 29 de agosto de 2024[12].

Concluido el descubrimiento de prueba, el 11 de diciembre de 2024, los recurridos presentaron su oposición a la moción de sentencia sumaria parcial presentada por el señor Sueiro[13]. El 9 de enero de 2025, el peticionario presentó una réplica a la oposición presentada por los recurridos[14]. Mientras, el 29 de enero de 2025, los recurridos presentaron su dúplica[15]. Con el beneficio de los escritos presentados por ambas partes, el 29 de enero de 2025, el foro primario notificó una orden mediante la cual dio por sometido el asunto para su resolución[16].

El 15 de julio de 2025, notificada el 16 de julio de 2025, el Tribunal de Primera Instancia emitió una *Resolución Interlocutoria*, mediante la cual declaró **sin lugar** la moción en solicitud de sentencia sumaria parcial presentada por el señor Sueiro[17]. En su consecuencia, ordenó la continuación de los procedimientos.

En el referido dictamen, el foro recurrido consignó un total de **ciento noventa y nueve (199) determinaciones de hechos no controvertidos**, a base de las alegaciones, admisiones y documentos que obraban en el expediente judicial[18]. Sin embargo, el foro recurrido determinó que no procedía resolver parcialmente el caso por la vía sumaria debido a la existencia de varias controversias de hechos materiales, a saber:

1. Si, en efecto, se le adeuda un dinero al demandante, por el acuerdo verbal, realizado con los demandados. Si el demandante recibió la cuantía de pago correcta en torno al SVOG del evento celebrado (*Súbete*).

---

[11] Entrada núm. 168, SUMAC TPI.

[12] *Íd.*, entrada núm. 169.

[13] *Íd.*, entrada núm. 176.

[14] *Íd.*, entrada núm. 178.

[15] *Íd.*, entrada núm. 181.

[16] *Íd.*, entrada núm. 182.

[17] *Íd.*, entrada núm. 184.

[18] El foro primario transcribió las determinaciones de hechos no controvertidos *ad verbatim*, tal cual surgen de los documentos que tomó en consideración.

2. Si los demandados le adeudan algún dinero al demandante, por las actividades comerciales mencionadas en la demanda del presente caso.

3. Si los fondos federales recibidos por cualquiera de las demandadas por razón del SVOG le pertenecían en totalidad a las partes de epígrafe.

En desacuerdo, el 31 de julio de 2025, el señor Sueiro presentó oportunamente una moción de reconsideración[19]. El 1 de agosto de 2025, el foro primario ordenó a los recurridos que replicaran a la misma dentro del término de treinta (30) días[20]. El 28 de agosto de 2025, los recurridos presentaron su oposición a la moción de reconsideración[21]. En la misma fecha, y con el beneficio de las posturas de ambas partes, el Tribunal de Primera Instancia emitió una resolución mediante la cual declaró sin lugar la moción de reconsideración presentada por el peticionario[22].

Inconforme, el señor Sueiro instó este recurso de *certiorari* el 29 de septiembre de 2025, y señaló la comisión de los siguientes errores:

Erró el Tribunal de Primera Instancia al no decretar que la oposición y la oposición [*sic*] a la sentencia sumaria parcial no cumplieron con la Regla 36.3 y que por tanto la sumaria quedó sometida sin oposición y procedía como cuestión de derecho.

Erró el Tribunal de Primera Instancia al no declarar con lugar la sentencia sumaria parcial bajo sus propias determinaciones de hecho.

Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la solicitud de sentencia sumaria bajo el fundamento de existir controversias de hecho.

En síntesis, el señor Sueiro plantea que el foro primario erró al acoger y considerar la oposición a su solicitud de sentencia sumaria parcial, toda vez que dicha oposición no cumplía con los requisitos dispuestos en la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V. Aduce que los recurridos no controvirtieron la prueba presentada por él, y que descansaron en meras alegaciones y en una sola declaración jurada

---

[19] Entrada núm. 185, SUMAC TPI.

[20] *Íd.*, entrada núm. 186.

[21] *Íd.*, entrada núm. 187.

[22] *Íd.*, entrada núm. 189.

inadmisible en evidencia. Arguye que el incumplimiento con la normativa procesal tiene el efecto de que se tomara su solicitud como una sin oposición.

Por otra parte, el señor Sueiro plantea que el foro primario erró al declarar sin lugar su solicitud por el fundamento de que existían controversias de hechos materiales, a pesar de que las determinaciones de hechos favorecían su contención. Aduce que su solicitud fue presentada a los efectos de que se determinara que se había configurado un contrato entre el señor Dueño y él, de manera que se determinara cuáles eran las obligaciones bajo el mismo, y si alguna de estas fue incumplida. Sostiene, que las ciento noventa y nueve (199) determinaciones de hechos plasmadas por el propio foro recurrido establecían su contención.

A base de las determinaciones de hechos, el peticionario reitera que el señor Dueño se obligó a reclamar, a través de su compañía Seba, las ayudas federales por el concierto cancelado de Miami, y aquél que se había programado en el *Coca Cola Music Hall* para el 2020. Sostiene, además, que el señor Dueño le ocultó el recibo de dichos fondos, solicitados a través de JDEG, a pesar de que presuntamente este aseguró que lo repartiría entre los coproductores de los eventos cancelados. Por esto, reclama que procedía la determinación de que había mediado dolo contractual *post contrahendo*.

Por último, el señor Sueiro aduce que la totalidad de la prueba que obra en el expediente judicial es suficiente para adjudicar su solicitud, la cual versaba sobre la existencia del contrato verbal y su incumplimiento doloso. Arguye que las tres (3) controversias de hechos materiales consignadas por el foro primario demostraban que solo restaba dirimir la presunta cuantía que le adeuda el señor Dueño, lo cual que nunca solicitó en su moción de sentencia sumaria, pues entiende que son cuestiones que deben dirimirse en un juicio plenario.

Por su parte, el 10 de octubre de 2025, los recurridos presentaron su oposición a la expedición del recurso de *certiorari*. En ella, los recurridos

aducen que el foro primario no erró al tomar en consideración su escrito en oposición a la moción de sentencia sumaria. Arguyen que el incumplimiento con los requerimientos procesales no constituía razón suficiente para declarar la solicitud de sentencia sumaria sometida sin oposición.

Adicionalmente, sostienen que su escrito en oposición a la solicitud de sentencia sumaria parcial fue presentado con una declaración jurada y un informe pericial de un contable público autorizado, los cuales rebaten las alegaciones del peticionario. Arguyen que el señor Sueiro sacó fuera de contexto las admisiones que hiciera el señor Dueño, las cuales no establecen de forma certera sus reclamos en cuanto a la existencia e incumplimiento del presunto contrato verbal.

Por lo tanto, aducen que la existencia de controversias en cuanto a la credibilidad y a otros hechos materiales impiden la resolución sumaria del caso. A tales efectos, los peticionarios sostienen que es necesaria la celebración de una vista en su fondo para dirimir la existencia de los presuntos acuerdos verbales.

Por último, los peticionarios arguyen que el recurso de *certiorari* es improcedente, pues su presentación no cumple con ninguno de los requisitos de la Regla 40 del Reglamento de este Tribunal. En esencia, sostienen que la determinación del foro primario no fue contraria a derecho, pues se ciñó al estándar normativo de la sentencia sumaria, que los hechos del caso ameritan su adjudicación en juicio plenario, y que el peticionario no demostró que el foro recurrido incurriese en error manifiesto al determinar la existencia de controversias de hechos materiales. Además, reitera que este foro no debe expedir el recurso ante la existencia de controversias, por lo que no es la etapa procesal indicada para tales fines. Añaden que su expedición ocasionaría, además, una dilación innecesaria, y que su denegatoria no lesionaría derecho alguna de las partes.

II

A

Distinto al recurso de apelación, el tribunal al que se recurre mediante *certiorari* tiene discreción para atender el asunto planteado, ya sea expidiendo el auto o denegándolo. Véase, *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Así, pues, el *certiorari* es un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

La discreción para entender en el recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Cual reiterado, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción, o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier

norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service,* 117 DPR 729, 745 (1986). Lo anterior le impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro primario. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

B

La sentencia sumaria es un mecanismo procesal disponible para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. En su consecuencia, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Íd.*, a las págs. 213-214.

Así, el Tribunal Supremo ha señalado que, "la parte que solicita la sentencia sumaria en un pleito está en la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley". *Rivera, et al. v. Superior Pkg., Inc., et al.*, 132 DPR 115, 133 (1992). A su vez, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten

en los documentos y las declaraciones juradas ofrecidas por la parte promovente." *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

Con relación a los hechos relevantes sobre los que se plantea la inexistencia de una controversia sustancial, la parte promovente "está obligada a desglosarlos en párrafos debidamente enumerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 432. Por su lado, la parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria. *López v. Miranda*, 166 DPR 546, 563 (2005). Así pues:

> […] la contestación a la moción de sentencia sumaria tiene que ceñirse a ciertas exigencias en lo atinente a los hechos. Primeramente, recae sobre la parte que responde el deber de citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente.
>
> De otra parte, puede también el oponente someter hechos materiales adicionales que alegadamente no están en disputa y que impiden se dicte sentencia sumaria. Le compete entonces, similar al proponente, enumerarlos en párrafos separados e indicar la pieza evidenciaria que los apoya con referencia específica al fragmento de esta en que descansa cada aserción. [...].

*SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 432.

Dichos requisitos no son un mero formalismo, ni constituyen un requisito mecánico sin sentido. *Íd.*, a la pág. 434. Cónsono con lo anterior, de proceder en derecho, el tribunal podrá dictar "sentencia sumaria a favor del promovente si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada". *Íd.*, a la pág. 432. Así pues, el tribunal tiene "la potestad de excluir los hechos propuestos que no hayan sido debidamente numerados o que no tengan correlación específica a la evidencia admisible que supuestamente los sostiene". *Íd.*, a la pág. 433.

Por último, no procede resolver un caso por la vía sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay

alegaciones alternativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (4) como cuestión de derecho no procede. *Echandi v. Stewart Title Guaranty Co.*, 174 DPR 355, 368 (2008). Además, un tribunal no deberá dictar sentencia sumaria cuando existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de credibilidad es esencial. *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009).

III

Hemos evaluado con detenimiento las 199 determinaciones de hechos no controvertidos contenidos en la resolución objeto de revisión, y concluimos que, con ellas, el foro primario adelantó significativamente la resolución del presente litigio. No obstante, coincidimos con el tribunal *a quo* en que aún persisten controversias medulares que requerirán de un juicio plenario. No solo se trata de las cuantías adeudadas, si alguna, por los recurridos al señor Sueiro, sino también la existencia de elementos subjetivos de intención; en este caso, del presunto dolo en el que supuestamente incurrió el señor Dueño.

Así pues, concluimos que no medió un craso abuso de discreción, ni prejuicio o parcialidad, ni el foro primario se equivocó en la interpretación o aplicación de alguna norma procesal, por lo que la intervención de este tribunal apelativo, en esta etapa, no se justifica.

IV

A la luz de lo antes expuesto, este Tribunal deniega la expedición del auto.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones